[No. 45b.  Decided June 23, 1892.]

THERESA KLEPSCH, *Administratrix of the Estate of ·George Klepsch, Deceased, Respondent*, v. GEORGE DONALD, JAMES L. SMITH AND FRANK B. HOWELL, *Appellants*.

DEATH BY WRONGFUL ACT—QUESTION OF NEGLIGENCE FOR JURY—DAMAGES
—VIEW OF PREMISES—INSTRUCTIONS.

Where blasting in a certain locality is not unlawful, the fact that a man was killed by a rock thrown by the blast between 940 and 1,200 feet in a horizontal direction, constitutes only a *prima facie* cause of negligence, which may be rebutted by showing due care on the part of those discharging the blast; and the question of negligence under such circumstances cannot be taken from the jury.

In an action for death by the wrongful act of defendant, the recovery is based upon proof of pecuniary damage and not upon proof of the death caused by the unlawful act or neglect of defendant.

It is a matter within the discretion of the court to grant or refuse a view of the premises by the jury in an action for damages.

An instruction informing the jury that they may consider the relations of the parties and witnesses, their interest, temper, bias, demeanor, intelligence and credibility in testifying, does not violate the constitutional provision prohibiting judges from charging juries with respect to matters of fact, or commenting thereon.

*Appeal from Superior Court, Spokane County.*

Action by Theresa Klepsch, as administratrix, against the defendants, who were partners under the firm name of Donald, Smith & Howell, to recover damages in the sum of $5,000 for the death of her husband, George Klepsch, alleged to have been caused by the negligent explosion of a blast on the part of defendants and their servants. The jury returned a verdict in favor of plaintiff for the sum of $5,000, and from judgment thereon defendants appeal.

*Thomas C. Griffitts*, for appellants.

*Arthur & Reagan, John B. Hess*, and *W. E. King*, for respondent.

The opinion of the court was delivered by

Stiles, J.—The respondent, plaintiff below, was the wife of the deceased, George Klepsch, who died from wounds inflicted by the fall of a rock thrown through the roof of his house by a blast alleged to have been fired by the appellants, within the city of Spokane Falls.

The material portions of the complaint were as follows:

"5. That the defendants by their negligence, imprudence, carelessness and wrong conduct, and the carelessness and negligence of their agents and servants so carelessly and negligently used and managed the giant powder and other material used for exploding, and so negligently and carelessly managed and conducted said blasting that said George Klepsch, deceased, with great force and violence, was struck and hit by a flying rock discharged from said blast caused by defendants, whilst he, the said deceased, was entirely ignorant of any danger, whereby the said deceased was then and there greatly injured, bruised, hurt and wounded; that by reason of said injuries which ensued in consequence of the negligence and carelessness of the defendants as aforesaid, the said George Klepsch died; and that said injury was caused without any fault or negligence on the part of said deceased, George Klepsch.

"6. That the plaintiff was wholly dependent upon the deceased, George Klepsch, for subsistence and support, and by reason of his death is left utterly helpless and in destitute circumstances.

"7. That by reason of the premises, the plaintiff as such administratrix has sustained damages in the sum of five thousand dollars."

The appellants denied that the rock came from their works, and sought to show that it was thrown from the works of other persons who were blasting in the same neighborhood. Appellants strongly urge this court to hold that the great preponderance of the evidence was in their favor on this point, and to remand the cause for a new trial on that ground; but we do not view it as a proper case for in-

terference with the verdict of the jury, who alone were qualified to determine the weight of the conflicting testimony.

Numerous errors of the court are assigned, the mass of which, however, are included within two propositions, viz.: 1. Did the court err in withdrawing the question of negligence from the jury? 2. Was there any evidence in the case upon which a verdict could be sustained?

1. It will be observed that the allegations of the complaint made the negligence, imprudence and careless management of the giant powder of the appellants the gist of the action, but the only evidence going to sustain those allegations was that the rock, if it came from appellants' works, was thrown horizontally between 940 and 1,200 feet. Under these circumstances the court took from the jury the entire question of negligence by the following charge:

"Under the evidence in this case the only question for the jury to determine in order that they should find for the plaintiff, is this: Was the death of George Klepsch caused by the act of the defendants or the act of their servants or employes? There is nothing for the jury to find in this case upon the question of negligence. If the rock which wounded the deceased came from a blast discharged by the defendants, or their servants, and that wound was the cause of his death, then your finding should be for the plaintiff."

Appellants complain of this charge, and we think with just cause. Respondent cites as a precedent for this charge, *Munro v. Pacific Coast Dredging, etc., Co.*, 84 Cal. 515, 18 Am. St. Rep. 248, the facts of which perhaps bore out the language used as it was stated in the opinion, that—

"The uncontradicted testimony showed a clear case of explosion in the city, where many persons were living, and where such an explosion could not take place without strong probability of its injuring someone."

The circumstances of that case seem to have been such that the act of blasting with dynamite or other high explosive *at that place* was regarded by the court as *per se* a nui-

sance, and therefore unlawful. So, in this case, if there had been facts before the jury such as to warrant the court to instruct as to nuisances, and that an unlawful use of explosives might be found, then the conclusive presumption would have arisen against the appellants, if they cast the rock. But neither the complaint nor the evidence claim or pretend to show that it was unreasonable for the appellants to use the blasting powder in the place they used it, and for the accomplishment of the work they were doing. Indeed, from the point whence respondent's witnesses say this rock came, it was nearly or quite 400 feet to the line of appellants' own premises at the point nearest the house of Klepsch. Negligence was, therefore, made the basis of the action in the complaint; negligence had to be proven, and the jury should have been permitted to say whether there was negligence or not. The appellants conceded at the trial that the mere fact that the rock was blown to so great a distance and off the appellants' premises, might be taken as *prima facie* evidence of negligence in the management of the blast, which, if not rebutted, would be sufficient to sustain a verdict. This concession was made under protest, and appellants do not now admit it to be good law. But we think that it should be the law of such cases, where the agency used is of a nature so dangerous, and where every trace of the material used and the methods employed are usually blown out of sight and beyond all possibility of proof, except by witnesses, who will be naturally unwilling, if not hostile.

Respondent has cited us to the leading English case of *Fletcher v. Rylands*, L. R. 3 H. L. 330, which is reported in full in 1 Thompson on Negligence, 2, and strenuously argues for its adoption as the rule of decision in this case. *Fletcher v. Rylands* is not an old case at all; it was fully decided in 1868, and there are many cases in this country of equal importance which hold otherwise, and are of earlier as well as later date. The principle there announced was

that "the person who, for his own purposes, brings on his lands, and collects and keeps there, anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape; and, although harmless to others so long as it is confined to his own property, will be obliged to make good the damages which ensue if he does not succeed in so confining it." That was an application to the storage of water of the same rule of liability to which owners of live animals are subjected upon their escape, which is a rule never adopted in this country as applied to inanimate property. On the contrary, with few exceptions, in America, if one builds a dam upon his own premises, and thereby accumulates water for his own benefit, or if he brings water upon his premises into a reservoir, in case the dam or reservoir give away and the land of his neighbor is flooded, he is not liable for damage without proof of some fault or negligence on his part. *Pixley v. Clark*, 35 N. Y. 520; 91 Am. Dec. 72; *Sheldon v. Sherman*, 42 N. Y. 484; 1 Am. Rep. 569; Gould on Waters, §§ 296-7-8; Wood on Nuisances, p. 134. The same principle was the basis of the decision in the case of fire set out by a railroad locomotive in *Columbia, etc., R. R. Co. v. Farrington*, 1 Wash. 202.

But there is also cited to us a line of blasting cases where negligence was presumed, and the defendants were not allowed to show due care in the manner of conducting the operations. These are *Hay v. Cohoes Co.*, 2 N. Y. 159; 51 Am. Dec. 279; *Tremain v. Cohoes Co.*, 2 N. Y. 163; 51 Am. Dec. 284; *Wright v. Compton*, 53 Ind. 337; *Carman v. Steubenville, etc., R. R. Co.*, 4 Ohio St. 399; *G. B. & L. Railway Co. v. Eagles*, 9 Col. 544. But one of these (*Wright v. Compton*) was for injuries to the person; all the others were for injuries to real property from casting rocks and earth thereon. All of the subsequent ones cite the *Cohoes* cases

with approval.   But the New York court of appeals has limited those cases, which were decided upon a literal construction of the maxim *sic utere tuo ut alienum non laedas*.

In *Losee v. Buchanan*, 51 N. Y. 476, 10 Am. Rep. 623, it was said that "the damage in the *Cohoes* cases was the *necessary consequence* of just what the defendant was doing;" that is, it was no accident, which is none the less an accident because it comes from negligence, which is not willful or malicious.   And in *Hay v. Cohoes Co.*, even, the decision was put upon the basis of nuisance, thus:

"A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance to the annoyance of the adjoining proprietor."

"No one questions that the improvement contemplated by the defendants upon their own premises (*i. e.*, a canal), was proper and lawful.   The means (blasting at that place) by which it was prosecuted, was illegal, notwithstanding.'

*Carman v. Steubenville, etc., R. R. Co.*, was also decided on the ground of nuisance, the court saying that there was no proof "that the injury was not the unavoidable consequence of blasting in that particular locality."   In *G. B. & L. Railway Co. v. Eagles* the judgment was sustained because the acts complained of were the natural and probable results of blasting at the locality.   *Wright v. Compton* was a personal damage case, the plaintiff having been injured by rocks blasted from a quarry near a public highway.   The *dicta* of the decision show a misapprehension of the *Cohoes* cases, though the decision was right, because the question of liability was left to hinge on whether warning had been given of the impending blast at a place where to blast at all was a nuisance.   So in *St. Peter v. Dennison*, 58 N. Y. 416, 17 Am. Rep. 258, where the blasting was so close that each time a blast was set off, it was the habit of the blasters to give notice; but there was a failure to notify plaintiff in the particular instance, and he was in-

jured by the fall of a quantity of frozen earth; this was another case where the natural and probable consequence of the blasting at that place was to throw the earth upon plaintiff's land, and injure him personally unless he were warned.

*Losee v. Buchanan,* 51 N. Y. 476, 10 Am. Rep. 623, contains a thorough and exhaustive review of these and other cases, as applied to stationary boiler explosions, with the conclusion that the question of liability depended on the finding of negligence as a fact; and as applicable to this case, the rule is laid down more strongly still in *Heeg v. Licht,* 80 N. Y. 579, 36 Am. Rep. 654, where one who constructed a powder magazine on his premises, was sued for damages to real property accruing from an explosion of the powder in store.     The material facts of that case are made clear only by reference to the report in 16 Hun. 257. The plaintiff requested the court to charge "that the powder magazine was dangerous in itself to plaintiff and his property, and was a private nuisance, and the defendant liable to the plaintiff whether it was carelessly kept or not." This the court refused, and did charge that the jury must find for the defendant, unless they found he carelessly and negligently kept the gunpowder on his premises.     The general term of the supreme court affirmed this action; but the court of appeals reversed on the ground that, while the request to charge was too broad, the charge given was too limited, and directed that on the new trial the danger arising from the locality where the powder was kept, should be submitted to the jury, that is, whether the place of storage was such as to make the keeping of powder there a private nuisance.     See *Hunter v. Farren,* 127 Mass. 481, 34 Am. Rep. 423.     Wood on Nuisances, § 140.

We hold, therefore, that in this case, as the blasting is not claimed to have been unlawful, the liability of the appellants depended upon whether they were negligent or not, to prove which under the circumstances the fact of the in-

jury was sufficient *prima facie* evidence; but that they should have been permitted to show due care on their part, and that the question of their negligence was for the jury.

2. The only evidence in this case which tended to support the allegation of damage was that deceased was the husband of plaintiff, that they had three children who were left dependent on plaintiff, and that for a period of two weeks out of seven in which they had resided in Spokane Falls deceased had earned six dollars a day as a bricklayer.

This action was probably brought with reference to Code of 1881, § 717, which we held not to be an existing statute in *Graetz v. McKenzie*, 3 Wash. 194; but the allegations of the complaint were as good to maintain an action under § 8 as under § 717.

Paragraph 6 of the complaint stated no matter material to the action, as neither the right to recover nor the amount of recovery depended in the slightest upon the pecuniary condition of the plaintiff. But it was incumbent upon plaintiff to allege and prove her damages specially. She alleged damage in $5,000, and recovered that sum without sufficient evidence to sustain it. The case was tried, and is argued here upon the theory that the statute which says that the personal representative may maintain an action for damages against the person causing the death of his decedent, and that in every such action the jury may give such damages, pecuniary and exemplary, as under all the circumstances of the case may to them seem just, means that the recovery is to be for causing the death, rather than for the damages (that is, for what the beneficiaries have suffered the loss of), and that upon proof of the death by the unlawful act or neglect of another, the jury are at liberty to award whatever sum they can agree upon without reference to any proof of pecuniary        To support this theory a number of cases        om California, of which the leading        *It. G. M. Co.*, 57 Cal.

20, wherein it has been held that substantially such a construction of the statute of that state is the correct one. A much stronger case supporting that view is *Matthews v. Warner's Admr.*, 29 Grat. 570; 26 Am. Rep. 396. The statutes there construed authorize the jury to give such damages as "under all the circumstances of the case may be just," Cal. Code Civ. Proc., § 377; or "such damages as to it may seem fair and just." Code of Va. 1873, ch. 145. Our statute does not have the limiting clauses of Lord Campbell's act, which was the parent of all the legislation on this subject; but neither is it as bare and unqualified as those above quoted. In most of the states the language is "such damages as they may deem fair and just with reference to the pecuniary injury resulting from such death." Our statute contains the words "pecuniary. or exemplary," and they are entitled to be considered, and have their proper weight. Construing them, we do not understand that in every case both pecuniary and exemplary damages are to be given, but that in a proper case, as where the injury occurs through accident procured by some neglect, the damage is limited to pecuniary loss, whereas, in cases of injuries caused by moral or legal wrong, amounting to willfulness, exemplary damage may be added. This construction is fair, and is the only one that will place our law in harmony with that of England, and all of the states but four or five, where recoveries of this nature are limited to some reasonable basis of allegation, proof and actual injury. *Van Brunt v. Cincinnati, etc., R. R. Co.*, 78 Mich. 530; *Hurst v. Detroit City Railway*, 84 Mich. 539; *Charlebois v. Gogebic etc. R. R. Co.* (Mich. March 18, 1892); 51 N. W. Rep. 812; *Mynning v. Detroit, etc., R. R. Co.*, 59 Mich. 257.

3. Under the meager allegations of the complaint, it was error to allow plaintiff to testify as to her children when objection was made. The defendant had no opportunity to meet such matters.

4. The court committed no reversible error in refusing a view of the premises where the injury occurred, though it would seem, from the testimony, that such a view might have been of advantage to the jury in coming to a proper conclusion. It was entirely in the discretion of the court to grant or refuse the request.

5. With competent evidence to sustain it, we think the seventh instruction given by the court would be a proper one. We do not see in it any suggestion to the jury that they might consider either the sufferings of the deceased, or the sorrow or poverty of the respondent or her children, or other sentimental loss.

6. The instruction numbered nine, informing the jury that they might consider the relations of the parties and witnesses and their interest, temper, bias, demeanor, intelligence and credibility in testifying was equally unobnoxious, and in no way violated § 16, art. 4 of the constitution.

Other alleged errors are immaterial.

The judgment is reversed, and the cause remanded for a new trial, before which plaintiff will have leave to amend her complaint.

Hoyt and Scott, JJ., concur.

Anders, C. J., concurs in the result.

Dunbar, J., dissents.