GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. H. B. GRAHAM.

Decided April 10, 1907.

**1.—Unhitched Team—Negligence.**

In a suit against a railroad company for the value of two horses killed and for damage to a wagon by defendant's locomotive, where it appeared from the evidence that plaintiff had left his team unhitched near defendant's track at the depot; that the horses became frightened at the usual and necessary signals of the engineer at such stations and ran upon the track in front of the engine; and that the engineer used all means at his command to stop the train as soon as he discovered the peril of the team, the plaintiff was not entitled to recover.

**2.—Same—License or Custom.**

The fact that plaintiff and others were licensed to place their teams near the depot platform did not deprive the defendant of the right to operate its

trains in the usual manner nor of giving the necessary and customary signals with its locomotives.

Appeal from the County Court of Uvalde County. Tried below before Hon. J. F. Robinson.

*Baker, Potts, Parker & Garwood, J. A. Weir* and *W. B. Garrett,* for appellant.—A railway company is not liable for damages resulting from teams becoming frightened near the track and suddenly running in front of the train, unless it is alleged and proved that the operatives in charge of the train saw the team and that the same was becoming frightened, or had reasonable grounds for believing that the team would be frightened, and failed to use ordinary care to prevent striking the same. Beaumont Pasture Co. v. Sabine & E. T. Ry., 41 S. W. Rep., 190; Galveston, H. & S. A. Ry. v. Cassinelli, 78 S. W. Rep, 249; Texas Central Ry. v. Harbison, 75 S. W. Rep., 549; San Antonio & A. P. Ry. Co. v. Belt, 24 Texas Civ. App., 281.

Where contributory negligence is pleaded, and it is made an issue in the case, it is error for the court to charge the jury that such negligence must have been the proximate cause of the accident, for which damages are sought. If there is contributory negligence on the part of plaintiff, it is, as matter of law, the proximate cause. Galveston, H. & S. A. Ry. v. Hubbard, 70 S. W. Rep., 112; Gulf, C. & S. F. Ry. v. Rowland, 90 Texas, 365.

*G. B. Fenley,* for appellee.—The court did not err in refusing special charge No. 1, asked by defendant, directing the jury to return a verdict for the defendant because in being at the point designated by defendant on its premises, with his freight team, the plaintiff was not a trespasser, but was there as a matter of right with the knowledge of the defendant and it was the defendant's duty to exercise ordinary care in the handling of passing trains at said point; whether defendant was guilty of negligence in handling the train in question, at the time of the injury, was clearly an issue for the jury. Houston & T. C. Ry. Co. v. Rippetoe, 64 S. W. Rep., 1016; Texas Midland Ry. Co. v. Cardwell, 67 S. W. Rep., 157; Missouri, K. & T. Ry. Co. v. Traub, 19 Texas Civ. App., 127.

FLY, Associate Justice.—Appellee sued appellant to recover the value of two horses killed by its train and for damages to a wagon, and recovered the sum of $351.

It appears that the horses were hitched to a wagon and were standing with their faces towards the track. They were not in charge of any one, the only restraint on them being that the lines were tied to the seat of the wagon. While they were so standing a train came by and the horses becoming alarmed rushed on the track in front of the locomotive and were struck and killed. The horses and wagon were at the place where those who came for freight usually stopped their teams. Appellee had gone with his team to the depot to carry cotton and to haul freight back to the town.

While the evidence showed that the teamsters and draymen were

permitted to drives their teams to the place where the team of appellee was standing when the horses became frightened, and while it may be admitted that the engineer in charge of the locomotive knew that it was customary for teams to stand there, it was not shown that he knew that horses were left standing unhitched and unattended near the track, or that he knew that the horses would be frightened at the signals required to be given by him in the performance of the master's service. He did not know of the presence of appellee's horses until they were approaching the track and when he saw them he used every means in his power to stop the train.

It is charged that appellant was guilty of negligence in running its train at a high rate of speed and in violently blowing its whistle near the water tank and that these two acts frightened the horses. The evidence showed that the horses were frightened, not by the rate at which the train was running but by the two short sharp blasts of the engine when near the water tank. Sevester Morales, a witness for appellee swore: "The horses started towards the track when the whistle blew. Before the whistle blew they were standing there." Those whistles were given in answer to the signal of the agent that the train was not to stop at Uvalde, and it was necessary that those two short whistles should be given, because it was necessary that the agent should know that his signal was received and understood. The train was not running at an unusual rate of speed. The horses were not seen by the engineer until they sprang upon the track. They were standing only 8 or 10 feet from the track with their faces towards it and when they sprang towards the track the locomotive was not more than 25 or 30 feet from them. Appellee did not testify to any whistling or unusual noise. Baylor swore to no unusual noise, but testified that the train was running "pretty fast." Henry Mertz swore that the train was going about the usual speed, but was not positive as to the whistle being blown. These with Morales were all the witnesses for appellee, and none of them contradicted the engineer who swore that he gave the usual necessary signals with the whistle, that the train was going about fifteen miles an hour, that no whistle was sounded after he saw the horses, except a stock alarm whistle to keep them off the track, that he threw on the emergency brake and that the train made no unusual noise. The engineer also testified that when he first saw the horses he thought some one was in charge of them. All was done that could be done to stop the train. There was no evidence tending to show that the drivers of wagons were in the habit of leaving their horses unhitched and unattended while they had them within a few feet of the railroad track, and if this had been shown to be a custom knowledge of it was not brought home to appellant's employes. There was no testimony tending to show that the answering signals were not usually given near the water tank. The railroad is not within the town limits of Uvalde. The evidence fails to make out a case of negligence on the part of the appellant.

It is the contention of appellee that as he and others had been licensed to place their teams near the platform and it was the custom for him and others to so place them, it was the duty of appellant to use ordinary care in so handling its train as not to emit such unusual

noises as would be calculated to frighten them. Let that proposition be admitted and appellee has no case, because there was no evidence of any unusual or unnecessary noise at the time the horses ran upon the track. As said in the case of San Antonio & A. P. Ry. v. Belt, 24 Texas Civ. App., 281: "A certain amount of noise is necessarily incident to the handling of a locomotive engine, and the noisy and sudden escape of steam from the safety valve is a matter of common knowledge. Persons who drive in close proximity to a locomotive on the assumption that it will remain quiet cannot be heard to complain that the horse takes fright at noises necessarily and usually incident to its safe operation. The company has the right to run its engines along its tracks, and in so doing to create such noises as are reasonably incident to its proper management. Liability would no more grow out of fright created by such a cause than could liability be predicated upon fright proceeding from the ordinary appearance of a locomotive in the absence of noise."

If appellee had a license to place his team near the railroad by the platform, that license did not deprive the railroad company of the right to operate its locomotives and trains in the usual manner, and did not deprive it of the privilege of giving the necessary and customary signals with its whistles. If the engineer had seen the horses and noticed that they were becoming restive and alarmed it might have been his duty to have refrained from giving the signal in response to one given to him by the station agent, but no such case is disclosed. There certainly is no warrant for the proposition that the railroad company was compelled to refrain from conducting its business in its own way, because it was possible or even probable, that appellee or some one else might have his horses near the railroad. The knowledge that appellee and others might be near the depot with their teams did not charge appellant with the knowledge that the teams would be left untied and unattended with their heads within six or seven feet of the track, and the horses would become frightened at an ordinary signal and rush upon the track in front of the engine.

Appellant owed no duty to appellee other than that it owed to any other man with a team near the railroad track, namely, to use all reasonable means to prevent injuries to him and his team when seen in a position of danger. Beaumont Pasture Co. v. Sabine & E. T. Ry., (Texas Civ. App.) 41 S. W. Rep., 190; Galveston, H. & S. A. Ry. v. Cassinelli, (Texas Civ. App.) 78 S. W. Rep., 247; Texas Cent. Ry. v. Harbison, (Texas Civ. App.) 88 S. W. Rep., 414.

There is nothing in the evidence that tends in the least to show that the engineer knew or had reasonable grounds for believing that the blowing of the two signals would frighten appellee's or any one else's horses. Under such circumstances it is well settled that the railroad company would not be liable for damages resulting from the animals becoming frightened. As said in the case of Hargis v. St. Louis, A. & T. Ry., 75 Texas, 190: "It is the duty of the company in running its trains to keep a lookout along its track so as not to injure persons found thereon, at least at public crossings. But further than this, in our opinion, the duty does not extend. The law requires that under certain circumstances the whistles shall be blown or bells

rung; and it may be presumed that the whistle and bell are necessarily used as signals in operating trains. It would seem to follow that persons in control of teams easily frightened and unaccustomed to such noises, should exercise care in approaching trains, and should not unnecessarily stop in close proximity to them." Not only did appellee stop his team in a few feet. of the main track, with their heads towards it, but they were left unattended, the reins being merely fastened to the seat on the wagon. The team had run away before that near the same place. Appellee was negligent in leaving the team as he did.

The judgment is reversed and judgment rendered that appellee take nothing by this suit and that appellant recover all costs of this court and the lower court.

*Reversed and rendered.*