MISSOURI IRON & METAL CO. v. CARTWRIGHT. (No. 8886.)

(Court of Civil Appeals of Texas. Ft. Worth. June 8, 1918. Rehearing Denied Oct. 19, 1918.)

1. EXPLOSIVES ⊜⊃12—INJURIES FROM BLASTING—NEGLIGENCE.

Notwithstanding right to blast upon one's own property, liability for damages may result if, in view of all the circumstances, a person of ordinary prudence would reasonably have foreseen injury.

2. NEGLIGENCE ⊜⊃136(18) — QUESTION FOR JURY—DANGEROUS INSTRUMENTALITIES.

Whether or not there has been negligence in the use of dangerous instrumentalities is a question for the jury.

3. NEGLIGENCE ⊜⊃25, 136(24) — ACTIONS — TRIAL—QUESTIONS FOR JURY—PRECAUTIONS AGAINST INJURY—NOTICE.

It is the duty of persons engaged in dangerous operations to give notice to all persons passing within limits of possible danger, and the question of negligence in omitting to do so is for the jury.

4. EXPLOSIVES ⊜⊃12—PRECAUTIONS AGAINST INJURY.

If, when defendants set off a blast on their land, it was reasonably apparent to a person of ordinary prudence that it might frighten plaintiff's horse on adjoining highway, defendants would be liable for resulting injury.

5. EXPLOSIVES ⊜⊃12—EVIDENCE—SUFFICIENCY—KNOWLEDGE OF DANGER.

In an action for injuries from a blast on defendants' land frightening plaintiff's horse on an adjacent highway, evidence showing defendants' knowledge of plaintiff's position and other circumstances held sufficient to support verdict for plaintiff.

6. EXPLOSIVES ⊜⊃12 — EVIDENCE — SUFFICIENCY.

Evidence held sufficient to support a finding of negligence of defendants in not taking proper precaution against injury to plaintiff, riding a horse on a public highway, by delaying the setting off of a blast upon defendant's land.

7. EXPLOSIVES ⊜⊃12—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Evidence held to show that plaintiff was not guilty of contributory negligence, proximately contributing to his injury resulting from the horse he was riding, on a public highway, being frightened by blasts set off upon defendants' land.

8. TRIAL ⊜⊃252(1)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

A requested instruction was properly refused, where there was no proof upon which to base it.

9. TRIAL ⊜⊃260(1)—REFUSAL OF INSTRUCTIONS ALREADY GIVEN.

It is not error to refuse an instruction on a matter sufficiently covered in the court's main charge.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by L. Cartwright against the Missouri Iron & Metal Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Slay, Simon & Smith, of Ft. Worth, for appellant.

Baskin, Dodge & Eastus, of Ft. Worth, for appellee.

DUNKLIN, J. The Missouri Iron & Metal Company, a partnership composed of Morris Ginsberg and L. Cohen, were engaged in the business of buying and selling scrap iron. Some of their purchases consisted of large wheel shafts and all kinds of old discarded machinery. In order to facilitate the handling and sale of the larger pieces, those pieces would be broken up with charges of dynamite. The place selected for such blasting operations was near a switch of the Texas & Pacific Railway Company near Ft. Worth. A road led from the residence of L. Cartwright and passed within a short distance of the place where the blasting was done to Cartwright's pasture, where he kept his cows; he being engaged in the dairy business. On the occasion hereinafter referred to, Cartwright left his home to go on horse-

back to his pasture. When he reached the place where the blasting was done, according to his testimony, he spoke to Ginsberg, who always did the blasting and who was then at the place where it was done, saying, "you are still loading, are you?" to which Ginsberg replied, "Yep, still loading." After finishing that conversation, he continued on his way to the pasture, and had traveled only a short distance, when a loud blast was set off, the noise of which frightened the horse he was riding causing him to jump and throw Cartwright to the ground. As a result of that fall, he sustained personal injuries and later instituted this suit against the Missouri Iron & Metal Company to recover damages for the injuries so sustained. A trial before a jury resulted in a verdict and judgment in his favor for the sum of $750, from which the defendants have prosecuted this appeal.

The suit was predicated upon allegations of negligence on the part of the defendants in the following particulars:

(1) In conducting such blasting operations in the close proximity, to wit, 30 feet, to the road on which plaintiff was traveling which was a regularly traveled highway.

(2) In failing to give plaintiff any notice or warning that an explosion was about to occur at that time.

(3) In not confining such blasting operations to some building, inclosure, or pit whereby danger to the plaintiff and the public using said road would be avoided.

The only issues of negligence submitted to the jury as a basis for a verdict in plaintiff's favor were the two first stated.

Appellants insist that as the business in which they were engaged was a lawful business, and as it appears from the allegations in the petition that plaintiff was not injured by being struck by any material thrown by the force of the blast, but as the result only of the fright of his horse on account of the blast, the court erred in overruling their general demurrer to plaintiff's petition.

In support of that assignment, appellants have cited such cases as the following: G., H. & S. A. Ry. v. Graham, 46 Tex. Civ. App. 98, 101 S. W. 846; Hieber v. Central Kentucky Traction Co., 145 Ky. 108, 140 S. W. 54, 36 L. R. A. (N. S.) 54; Bessemer Coal Co. v. Doak, 152 Ala. 166, 45 South. 627, 12 L. R. A. (N. S.) 389; Booth v. Rome, etc., Ry., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552; Holland House Co. v. Baird, 169 N. Y. 136, 62 N. E. 149; Simon v. Henry, 62 N. J. Law, 486, 41 Atl. 692; Mitchell v. Prange, 110 Mich. 78, 67 N. W. 1096, 34 L. R. A. 182, 64 Am. St. Rep. 329.

[1-3] In the case first cited, Railway v. Graham, plaintiff sought damages against the railway company resulting from fright of his team caused by the sounding of the whistle of an approaching locomotive, and in that case the railway company was held not liable because, as stated in the opinion:

"There was no evidence of any unusual or unnecessary noise at the time the horses ran upon the track."

The court further said:

"Appellant owed no duty to appellee other than that it owed to any other man with a team near the railroad track, namely, to use all reasonable means to prevent injuries to him and his team when seen in a position of danger"—citing cases.

The other authorities cited above were suits for damages resulting from blasting operations in which it was held that no liability on the part of the defendants was shown. In our opinion those authorities seem to go no farther than to announce the rule as stated in Bessemer Coal Co. v. Doak, supra, as follows:

"One engaged in blasting on his own property is not liable for injuries to a neighbor from mere concussion of the air, sound, or otherwise, unless the work was done negligently, and the injury was the result of the negligence."

We construe all of those decisions in the blasting cases as recognizing the general rule that, notwithstanding the right of a person to blast or perform any other lawful act upon his own property, yet he may be liable for damages resulting therefrom if, in view of all the surrounding circumstances attending the act of blasting on any particular occasion, a person of ordinary prudence would reasonably have foreseen injury to another as a result therefrom and would have refrained from such act by reason thereof.

The rule in such cases is aptly expressed in 29 Cyc. 424, 425, in discussing the duty owing by every one, the violation of which constitutes actionable negligence, in the following language:

"This duty is usually applied by law, the rule being that the law imposes on a person engaged in the prosecution of any work an obligation to perform it in such a manner as not to endanger the lives of persons or others, and the law imposes on every person in the enjoyment of his property the duty of so using his own as not to injure his neighbor. This duty may arise out of circumstances; and this is especially true where a person is using or dealing with a highly dangerous thing which, unless managed with the greatest care, is calculated to cause injury to bystanders, where an owner has reason to apprehend danger owing to the peculiar situation of his property and its openness to accident, or where it was apparent that if a person did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger or injury to another. In such case a duty arises to use such care and skill."

Again, on page 636 of the same work, the following is said:

"Whether or not there has been negligence in the use and conduct by defendant of dangerous

instrumentalities and operations whereby plaintiff has suffered injury is a question of fact for the jury."

Also on page 637 occurs the following:

"It is the duty of persons engaged in dangerous operations to give notice to all persons about passing within the limits of possible danger; and the question of negligence in omitting to do so, if persons passing are injured, is for the jury."

[4] In Scott v. Shine, 194 S. W. 967, 968, this court had occasion to review the decisions in suits for injuries resulting from the fright of teams caused by the sound of whistles and the escape of steam from railway locomotives. The rule announced in that opinion which is sustained by the authorities cited is that railway companies are authorized by statutes, and it is made their duty, to operate trains, and to that end enjoy all means necessarily incident to the accomplishment of that purpose; and as a general rule they are not liable for damages resulting therefrom, but may be held liable for failure to refrain from sounding the whistles of locomotives whenever it is apparent that such whistles will probably cause fright of teams and injury to their drivers and when persons of ordinary prudence similarly situated would not give such cause of fright. A railway company having the statutory right to use such agencies stands in the same legal relation to the public as a person owning property and having the legal right to conduct blasting, or other dangerous operations thereon, and the rule relating to the duty each owes to the public to avoid injury from such operations is the same.

Notwithstanding the fact that defendants had the lawful right to use blasts in the conduct of their business, they owed the duty to conduct such operations with due regard for the safety of others, and if at the time of the blast in question plaintiff was so near the place where the blast occurred that it was reasonably apparent to a person of ordinary prudence in Ginsberg's situation that the blast might probably cause plaintiff's horse to become frightened, and that as a result of such fright plaintiff might probably be injured, and if a person of ordinary prudence under the same circumstances would have refrained from setting off the blast, while plaintiff was so near, then we perceive no reason why defendants would not be liable in damages for such injury. Scott v. Shine, supra; Smith v. Day, 128 Fed. 564, 63 C. C. A. 189; Klepsch v. Donald, 4 Wash. 436, 30 Pac. 991, 31 Am. St. Rep. 936; Heinmiller v. Winston, 131 Iowa, 32, 107 N. W. 1102, 6 L. R. A. (N. S.) 151, 117 Am. St. Rep. 405; Wolf v. Des Moines Elevator Co., 126 Iowa, 659, 98 N. W. 301, 102 N. W. 517.

[5] According to plaintiff's testimony, after talking with Ginsberg on the day of the accident he had not traveled more than 75 yards from defendant's place of business before the blasts were set off, which were described by him as follows:

"There were three blasts at this time. They were fearfully loud and jarred the earth."

He further testified:

"So the first thing I knew there was a blast went off, and the horse wheeled around, and another one went off, and she wheeled, and I fell off then."

It was further shown that the country was open, with nothing to obstruct Ginsberg's view of the plaintiff at the time. Such facts, in connection with others recited above, were sufficient to support the jury's verdict of negligence upon the issues submitted.

[6, 7] The proof shows that the blasting operations had been going on at intervals for a period of more than one year, and that plaintiff's residence was about one-half mile distant therefrom. He knew of such operations and frequently heard the blasts, but according to his testimony he had not heard one for at least a week and probably a month or so prior to the date of the accident. He testified that, when he talked to Ginsberg immediately prior to the accident, the latter told him that he was then engaged in loading a car, and, according to plaintiff's further testimony, he did not then know and had no reasonable grounds for expecting that any blast was about to be set off. He further testified that the mare he was riding had never before been frightened at the blast; that he had ridden her in that vicinity several times while blasting was going on, but not very near the blasting; that he had owned her for about a year; that she was reasonably high strung, but did not get nervous when he was riding her and chasing cattle.

In view of the evidence above recited, we overrule all assignments predicated upon the contention that the proof was insufficient to support a finding of negligence in the respects submitted in the court's charge, and upon the further contention that the evidence showed conclusively that plaintiff was himself guilty of negligence proximately contributing to his injury barring a recovery by him.

In order to establish the allegations of negligence submitted to the jury, it was not necessary to show by proof that defendants knew that that particular horse was likely to scare at the blast of the kind plaintiff testified it was in such close proximity as 75 yards. On the contrary, we think the jury was warranted in finding that defendants should reasonably have anticipated that any horse of ordinary gentle disposition would likely take fright at such a blast under such circumstances. See Scott v. Shine, supra, in which a writ of error was denied.

[8] The defendant requested an instruction to the effect that, if plaintiff knew that the defendants were engaged in the business of blasting and at the time of the accident

was conducting such business, then the defendants did not owe him the duty to notify him that the blast was about to be set off and could not be held guilty of negligence in failing to give him the warning.

There was no reversible error in refusing to give that instruction, since there was no proof that the plaintiff knew, on the particular occasion of the accident and prior to the accident, that the blast was about to occur. His testimony flatly contradicts that contention, while the testimony introduced by the defendants was to the effect that no blasting at all was done on the day on which plaintiff claimed the accident occurred.

[9] Defendants requested a further instruction to the effect that if plaintiff's horse was calculated to scare at blasting operations, and that fact was known to him, and that in riding her in and about the place of blasting operations he was guilty of negligence, then he could not recover.

No error was committed in the refusing of that instruction because: First, the defense of contributory negligence was sufficiently covered in the court's main charge; and, second, as noted already, there was no evidence to show that plaintiff knew that the blast was about to be set off or was likely to be set off, his testimony tending to show that he had no reason to expect such a blast at that time, and no proof being introduced by the defendants tending to rebut that testimony.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.

Affirmed.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.