[No. 9237.   Department Two.   June 2, 1911.]

JOHN LYNCH, *Appellant*, v. NINEMIRE PACKING COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—RES IPSA LOQUITUR.  The doctrine of *res ipsa loquitur* does not apply where a vat for rendering tallow exploded and injured an employee after it had been successfully and continuously used for two and a half years, where the injured servant had complete charge and control of all the appliances and the cause of the explosion could not be ascertained; since the circumstances do not raise a presumption of negligence against the master where he is not in control.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered March 28, 1910, granting a nonsuit in an action for personal injuries sustained by an employee in a packing house through the explosion of a vat. Affirmed.

*E. J. Adams, Dan Pearsall*, and *A. Emerson Cross*, for appellant.

*Bridges & Bruener* and *Morgan & Brewer*, for respondent.

CROW, J.—Action by John Lynch against Ninemire Packing Company, a corporation, to recover damages for personal injuries.  From a nonsuit and order of dismissal, the plaintiff has appealed.

Appellant contends the trial judge erred in sustaining respondent's motion for a nonsuit.  The evidence shows the following facts:  Respondent was operating a wholesale meat and packing establishment in Aberdeen, and had installed in its plant a large vat for rendering tallow.  In the vat were two openings, one above for receiving the materials, and one below for discharging the same after rendering.  The lower opening could be closed by adjusting a swinging trapdoor, around the edge of which burlap was inserted to pre-

[1]Reported in 115 Pac. 838.

vent leaking. The door when closed was held by a clamp hooked over a rim on the vat, and securely fastened with an eye bolt passing through the clamp and door. The tallow was rendered by means of steam conducted into the closed vat from an engine and boiler which generated about eighty pounds pressure. The pressure in the vat was reduced and controlled at about forty to forty-five pounds by a suitable gauge provided for that purpose. The appellant was in exclusive charge of the vat, engine, boiler, and equipment. He had been thus employed for about eighteen months, but insists he was not an experienced or expert engineer.

On the evening of March 1, 1909, appellant adjusted, closed, and fastened the trapdoor over the lower opening. On the next morning he filled the vat from above with proper materials for rendering, closed the upper opening, turned on the steam, examined the gauge, noticed the pressure in the vat did not exceed forty to forty-five pounds, went into the engine room to look after the steam and boiler, returned to the vat, noticed that it was leaking, and to stop the leaking, tightened the clamp by turning the eye bolt. Shortly thereafter, while he was performing other necessary work near the vat, it suddenly exploded and caused him to be burned by hot tallow which escaped about him. The vat was thrown some two hundred feet, and after the accident it was discovered the clamp had been broken at the point where the eye bolt had passed through. No evidence was introduced sufficient to show whether the breaking of the clamp caused the explosion or the explosion caused its breaking. These various appliances had been successfully and continuously used for about two and a half years, no complaint being made of their fitness, suitability, or condition of repair.

Appellant's controlling contention is that the respondent, his master, did not provide him with a reasonably safe place in which to work, nor with reasonably safe appliances; and that the doctrine of *res ipsa loquitur* should be applied to this case, as one in which the accident itself suggests negligence

on the part of the master. In support of these contentions he cites, *Beall v. Seattle*, 28 Wash. 593, 69 Pac. 12, 92 Am. St. 892, 61 L. R. A. 583; *Klepsch v. Donald*, 4 Wash. 436, 30 Pac. 991, 31 Am. St. 936; *LaBee v. Sultan Logging Co.*, 47 Wash. 57, 91 Pac. 560, 20 L. R. A. (N. S.) 405; *Id.*, 51 Wash. 81, 97 Pac. 1104; *Cleary v. General Contracting Co.*, 53 Wash. 254, 101 Pac. 888, and *Riggs v. Northern Pac. R. Co.*, 60 Wash. 292, 111 Pac. 162. He contends that, when it had been made to appear from the evidence that he was properly using an instrumentality furnished by his master, which failed to perform its functions and exploded without fault on his part, he had made a *prima facie* case of negligence on the part of the master, under the doctrine of *res ipsa loquitur;* and that it then devolved upon the respondent to show by competent evidence that it was without fault, or that the accident occurred without negligence on is part.

It is true that, in the cases cited, this court applied the doctrine of *res ipsa loquitur* to the facts shown, and that in some of them the relation of master and servant existed. But in none of them did the servant have complete charge of the alleged defective appliances, in the sense that at the time he was exclusively using and controlling them. Appellant, as the respondent's servant, had exclusive control and supervision of all the appliances at the time of the explosion, and for a considerable period immediately prior thereto. The maxim of *res ipsa loquitur* is applied in negligence cases on the theory that the accident, in the light of surrounding circumstances, is of such a character as to raise a presumption of negligence from the occurrence itself; and on the further theory, that the injured party is not in a position to explain its cause; while the party charged, having more favorable opportunities, is in a position to thus explain and show himself free from negligence, if such be the case. If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged,

or if the plaintiff himself has equal or superior means of information, the doctrine will not apply.

In *Beall v. Seattle*, a pedestrian on a city sidewalk was injured by the explosion of a boiler wrongfully installed and maintained beneath the sidewalk, of which boiler he could not and did not have any knowledge. In *Klepsch v. Donald*, the plaintiff was injured by a stone thrown some distance from a blast with which he had no connection. In *LaBee v. Sultan Logging Co.*, the plaintiff was injured by the breaking of a cable which had not been placed, inspected, or in any manner regulated by him. He was not using the cable at the time of the accident. It was broken by a strain imposed under the direction of a vice principal of the master, who was then upon the ground. In *Cleary v. General Contracting Co.*, the plaintiff used a scaffold prepared for him by the defendant. He had nothing to do with its adjustment or construction. In *Riggs v. Northern Pac. R. Co.*, a brakeman in the course of his employment seized a defective handhold, which he had not theretofore inspected or used. In the *LaBee* case, in 51 Wash. 82, 97 Pac. 1104, we said:

"Where the facts of the case are such as to eliminate blame on the part of the servant, or his fellow servants, but show *prima facie* neglect on the part of some one, we think the master should be put to his proofs to show.that the blame is not his, just the same as he would be were the injury to a stranger. *Such a rule casts the burden upon the person who is in a position to know the facts, and who can make the proofs by direct and positive evidence*, while the rule contended for by the appellant compels the resort to indirect and circumstantial evidence."

This doctrine should not be applied to the facts before us. Appellant necessarily possessed superior knowledge as to the instrumentalities he was adjusting, operating, and using. Under such conditions, if a servant happens to be injured by the failure of an instrumentality to perform its ordinary functions, it is but just that some affirmative negligence be fixed upon the master to hold him liable, his knowledge of

the true cause of such failure being inferior to, or at least not superior to, that of the servant. Appellant testified he had done nothing out of the ordinary, thereby seeking to eliminate negligence on his part. If, however, the doctrine for which he contends is to be applied to such a case as this, the master would be at the mercy of a servant, who might do many things in the course of his employment, unknown to the master, which would contribute to or cause the accident.

In *Losie v. Delaware & H. Co.*, 126 N. Y. Supp. 871, the court said:

"The doctrine of *res ipsa loquitur* was not intended to exempt the plaintiff from the burden of proving affirmatively negligence, or circumstances making negligence a legitimate, if not an irresistible, inference. In the language of Judge Cullen in *Griffen v. Manice*, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, its 'application presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue, the defendant's negligence.' It is not the accident, but the manner and circumstances of the accident, that justifies the application of the maxim. The fact of the casualty and the attending circumstances may themselves furnish all the proof of negligence that it is necessary to offer; but when, as in this case, they do not, a plaintiff must prove facts and circumstances from which the jury may fairly infer negligence as the cause of the accident. 'In no instance can the bare fact that an injury has happened, of itself and divorced from all surrounding circumstances, justify the inference that the injury was caused by negligence.' *Benedick v. Potts*, 88 Md. 52, 40 Atl. 1067, 41 L. R. A. 478; *Griffen v. Manice, supra.*"

In the *LaBee* and other cases cited by appellant, we held that, under proper conditions and circumstances, we would not deny an application of the doctrine of *res ipsa loquitur* to negligence cases arising between master and servant. But when machinery, instrumentalities, or appliances are prepared for use and operated by the injured servant himself, without the direction, intervention, or supervision of the

master, and the servant, being in exclusive charge, controls
and directs them, it would then appear that the circumstances
were not such as to necessarily raise a presumption of neg-
ligence on the part of the master and subject him to the ap-
plication of the maxim. The master, not being in control,
would be at a much greater disadvantage in attempting to
account for the accident and explain its true cause than
would the servant. *In Griffen v. Manice,* 166 N. Y. 188, 59
N. E. 925, 82 Am. St. 630, 52 L. R. A. 922, the court, in dis-
cussing one theory upon which the maxim is based, said:

"The maxim is also in part based on the consideration
that where the management and control of the thing which
has produced the injury is exclusively vested in the defend-
ant, it is within his power to produce evidence of the actual
cause that produced the accident, which the plaintiff is un-
able to present."

Here the management and control were not exclusively
vested in the respondent. In an action of this character, there
must be some reasonable showing of negligence to require
the submission of that issue to the jury. Where the offending
appliances or instrumentalities are shown to have been under
the exclusive control of the defendant, and the accident in
its nature, circumstances, and surroundings is such as in
ordinary course would not occur with reasonable care on the
part of the defendant, then, in the absence of an explanation
by him, the accident itself might afford a sufficient sugges-
tion of negligence to require an application of the doctrine.
But no such condition appears in this cause. Here appellant,
as an employee of respondent, was himself a part of the
operating forces and was in a position to have done some act
which might have caused or contributed to the explosion. The
maxim of *res ipsa loquitur* may be termed a rule of evidence,
to the extent that, when properly applied, it raises a pre-
sumption of negligence sufficient to make a *prima facie*
case on behalf of the plaintiff, and call for an explanation
from the defendant. Mr. Wigmore, in Vol. 4 of his ad-

mirable work on Evidence, at § 2509, page 3556, discussing
the maxim, well suggests reasonable limitations to its ap-
plication, saying:

"With the vast increase, in modern times, of the use of
powerful machinery, harmless in normal operation, but ca-
pable of serious human injury if not constructed or managed
in a specific mode, the question has come to be increasingly
common whether the fact of the occurrence of an injury
(unfortunately now termed 'accident,' by inveterate misuse)
is to be regarded as raising a presumption of culpability on
the part of the owner or manager of the apparatus. 'Res
ipsa loquitur' is the phrase appealed to as symbolizing the
argument for such a presumption. In England, a rule of
that sort has for a generation been conceded to exist, for
some classes of cases at least. In the United States, the pre-
sumption has spread rapidly, although with much looseness
of phrase and indefiniteness of scope; as against a common
carrier, the presumption against a bailee (ante, § 2508) has
perhaps helped to confirm the rule where injury to goods
or passengers is involved. What its final accepted shape will
be can hardly be predicted. But the following considerations
ought to limit it: (1) The apparatus must be such that in
the ordinary instance no injurious operation is to be ex-
pected unless from a careless construction, inspection, or
user; (2) Both inspection and user must have been at the
time of the injury in the control of the party charged; (3)
The injurious occurrence or condition must have happened
irrespective of any voluntary action at the time by the party
injured. It may be added that the particular force and
justice of the presumption, regarded as a rule throwing
upon the party charged the duty of producing evidence,
consists in the circumstance that the chief evidence of the
true cause, whether culpable or innocent, is practically ac-
cessible to him but inaccessible to the injured person."

Applying the second limitation mentioned, it is apparent
that, at the time of this accident, inspection and user were
not in control of the respondent. While we have heretofore
held that, under proper circumstances and conditions, the
maxim of res ipsa loquitur will be applied to the relation of
master and servant in negligence cases, we have not held that

the mere existence of that relation calls for its application to all such cases. To do so would, in many instances, compel us to ignore the elementary principles on which the doctrine is based, and thereby unjustly place the master at the mercy of a servant who might himself be at fault.

Some exceptions are taken to rulings of the trial court on the admissibility of evidence, but we find no prejudicial error in that regard. The judgment is affirmed.

DUNBAR, C. J., MORRIS, and CHADWICK, JJ., concur.