[No. 14052. Department One. July 25, 1917.]

S. L. McCLELLAN et al., *Appellants*, v. FRANK SCHWARTZ, *as Alaska Junk Company, Respondent.*[1]

MASTER AND SERVANT—EXISTENCE OF RELATION. The purchaser of junk, who was injured by the fall of hoisting tackle on the seller's premises, where he went in his own interests to help the seller's servants fill the order, does not in any sense stand in the relation of a servant to whom the seller owed a duty to furnish safe appliances.

NEGLIGENCE — PRESUMPTIONS — RES IPSA LOQUITUR. Where the cause of the fall of hoisting tackle was not shown, and the appliance was not shown to be defective, the defendant is not put to his proof upon the doctrine of *res ipsa loquitur*, which requires that the offending instrumentality be identified.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 10, 1916, in favor of the defendant, upon granting a nonsuit, in an action for personal injuries. Affirmed.

*Israel & Kohlhase*, for appellants.

*Trefethen & Findley*, for respondent.

CHADWICK, J.—Appellants bring this action to recover damages for "personal injuries sustained by reason of the faulty construction or maintenance of appliances and in-

[1]Reported in 166 Pac. 783.

strumentalities consisting of beams or planks and blocks and tackle maintained and operated in the course of respondent's business."

Respondent is a dealer in junk in the city of Seattle. He occupies a building of three stories and basement. There are sets of windows in each story, one above the other. Beneath them is an area window in the basement which extends above the level of the sidewalk. It is described as being about three and one-half feet long by twenty to twenty-four inches wide. Out of the upper or third story window a beam had been extended, to which blocks and tackle had been rigged for hoisting stock in and out of the building.

Appellant S. L. McClellan, who is a blacksmith and wagon repairer maintaining a place of business in Seattle, went to respondent, with whom he had been accustomed to deal, to buy some second-hand rubber. After negotiating and agreeing upon amounts and prices, respondent, who was busy, told two Japanese in his employ to go with appellant to the basement and to assist him in selecting the rubber. This was done. A large pile of rubber was placed under the area window, and the block was attached. One of the Japanese remained in the basement to guide and push the load out of the window, and the other went out on the sidewalk and started to pull the haul line. The load, which was too large to pass through the window easily, stuck. The Japanese who was hauling the line said to appellant, "Give me a pull." Appellant,

"walked over and took hold of the rope with him, and we were standing off at an angle, about I guess ten or eleven degrees from where it was fastened up overhead, and the Jap says "Let us get straight under it, it will pull easier." All right we went straight under it, pretty soon the Jap up overhead on the second story window, he had hold of this rope also, well they were talking Japanese back and forth to one another, and finally this little Jap up above he gave a yell out of him— Q. Just before he gave a yell where was the rubber, on the end of the tackle at the time he hollered? A.

It was right up to the opening where the window opened and the Jap in the basement was trying to shove it out, and this Jap up above gave a yell out of him and this rope slacked away quick and I jumped one way and this Jap jumped the other."

Appellant was knocked senseless and removed to the office room of respondent. When he recovered consciousness, he asked respondent "how he had the block and tackle fastened to give way that way." Respondent replied, "it was not the block and tackle, . . . it was the plank flew off and hit me."

No witnesses were called to show the character of the hoisting apparatus—whether structurally weak or strong. Appellant himself, who had gone there frequently to buy goods, was no stranger to the premises. He says that, when requested to "give a pull," he looked at the tackle; that it was rigged with a 3/4 or 7/8 rope, and 5 or 6 inch sheave and "looked good to him." That he was competent to form an opinion, is evident from his own testimony. He had a similar appliance in his own shop and was accustomed to raise great weights, such as automobiles and automobile bodies with it.

This being the state of the evidence, and it not being made to appear, except by inference, that the accident occurred through any fault or defect in the block and tackle or its rigging, the court entertained a motion for a nonsuit, and thereafter entered a judgment of dismissal.

Appellant predicates his right to have the judgment reversed upon two theories.

He first contends, if we follow the argument advanced in his brief, that there was some relation of master and servant existing, and that respondent owed a duty to appellant to furnish safe appliances, that the breaking of the appliance raises a presumption of negligence, that a *prima facie* case was made out, and respondent should have been put to his proofs. A careful review of the evidence will not sustain the conclusion that respondent requested appellant to do

anything that might or should have been done by him. On the contrary, it is clear that appellant was acting in his own behalf. The so called request was no more than a suggestion that appellant go down and help the Japanese pick out junk to fill the order. Appellant was serving his own interest, and, if not to get the better of the trade, to get full value for his money. He testifies that the Japanese "did not get around the way I thought they ought to," and:

"They started in rolling rubber over, and there was a lot of rubber on top old ragged stuff, that was not hardly fit enough to throw in the sewer. I called him Charlie, I says, 'I don't want that' and so I picked up a piece and I says, 'I want rubber like that' so I ran my hand in my pocket and gave one of them a tip of twenty-five cents and the other fifteen, that was all the change I had in my pocket. I did that to encourage them, so that they would pick out the rubber for me. Gave it to them right away, I wasn't there over fifteen minutes. It was because they were not picking out the best rubber down there, that I gave them the tip, thinking they would pick out the best rubber. . . ."

It can hardly be said that appellant was acting upon the request or under the implied direction of the respondent when, by his testimony, he did no more than direct the Japanese in his own interest, even to the extent of stimulating their interest in him by a voluntary donation.

There is another reason for rejecting this theory. That is, the accident is not attributable to anything connected with the picking out of the rubber. That had been done. Appellant had assumed the attitude of an onlooker when requested by the Japanese to "give a pull."

The main reliance of the appellant is in the doctrine of *res ipsa loquitur*. Many cases are cited where the doctrine has been applied. But authority cannot be treated as a fetich. Negligence cases, more than any other, depend upon the facts of the particular case. As we have often said, each case is one of original inquiry and the facts speak the law. This is especially so where the doctrine of *res ipsa loquitur*

is invoked, for that doctrine rests primarily in circumstances. The doctrine is, in its application, no more than proof by circumstantial evidence. *Frescoln v. Puget Sound Traction, Light & Power Co.*, 90 Wash. 59, 155 Pac. 395; *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N. S.) 931.

The fairest, and at the same time the strongest, statement in favor of the position of the appellant is to be found in *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016.

"Common observation and experience teach that sound appliances do not break when employed in a proper manner and in the use for which they were designed."

Because of the circumstantial character of the testimony, the doctrine is applied sparingly. *Anderson v. McCarthy Dry Goods Co.*, *supra*. Hence it has been held that one charged under the doctrine of *res ipsa loquitur* is not to be put to his proof unless there is some showing of cause— careless construction, lack of inspection, or misuser. The cause of the accident—the offending instrumentality—must be identified before one charged is put to answer.

The rule applied to a similar state of facts is accurately stated in *Johnson v. Columbia & Puget Sound R. Co.*, 74 Wash. 417, 133 Pac. 604. There the cause was not shown, nor was it shown that the appliance was defective. The court held, just as it was held in *Cole v. Spokane Gas & Fuel Co.*, 66 Wash. 393, 119 Pac. 831, that it is a showing of facts sufficient to sustain a presumption of negligence, and not the fact of injury, that sets the doctrine in motion. The reporter gathered the rule of the cases and has well stated it in the syllabus to the *Johnson* case, *supra*.

"There can be no recovery on the ground of *res ipsa loquitur*, where there was nothing to show what caused the iron to slip and no proof of negligence; since it was necessary for plaintiff to show that it was caused by defective machinery or some extraordinary or negligent act under the control of the defendant."

See, also, *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D 433; *Samardege v. Hurley-Mason Co.*, 72 Wash. 459, 130 Pac. 755.

Appellant did not account for the cause of the accident, nor did his testimony reveal circumstances from which it can be reasonably inferred. The judgment of dismissal was properly entered.

Affirmed.

ELLIS, C. J., MORRIS, and MAIN, JJ., concur.