[No. 31663.   Department One.   July 26, 1951.]

MILTON N. EMERICK, JR., *Appellant*, v. WERNER
MAYR *et al.*, *Respondents.*[1]

[1]Reported in 234 P. (2d) 1079.

*Theodore B. Bruener* and *A. D. Gillies*, for appellant.

*Lester T. Parker*, for respondents.

SCHWELLENBACH, C. J.—This is an appeal from a judgment dismissing appellant's action for damages to his truck and trailer.

At the time of the accident, Milton N. Emerick, Jr., owned and operated a logging truck and was engaged in hauling logs for Mayr Brothers. He had been operating for four months under a state permit which had been issued to him upon his representation that he was an experienced log hauler. Prior to that time, he had spent four years and nine months in the army.

April 15, 1949, he had made one trip and was back for a second load. A fir log was picked out which was thirty-two feet long, sixty-three inches in diameter, and had a footage of 5,970 feet. This was larger than the logs ordinarily shipped. It is customary in that area to use a strap of cable to lift logs of this size. However, on that day the Mayrs had no strap of the proper size available, so they wrapped the loading line two complete turns around the log and shackled the loading line. The log was lifted into the air by the loading machine, and the second loader ordered Emerick to back up, which he did. At that time the line broke, causing the log to fall on the truck and trailer, which were damaged in the amount of $2,049.42. There was some testimony concerning loss of time, but we are of the opinion that this element of damage was not proved with sufficient certainty.

The specific allegations of negligence were that the defendants: (1) Failed and neglected to use proper equipment for the loading of a log the size and weight of that then attempted to be loaded; (2) Failed to use reasonable care and proper methods in loading the log; (3) Were negligent and careless in permitting the log to break away.

At the time of trial, plaintiff was permitted to amend his complaint by alleging further that the defendants were negligent in wrapping the loading line around the log and using it as a choker line.

All of these allegations of negligence were denied by defendants, who alleged affirmatively that the injury was not caused by their negligence, but was caused solely by accident, and that this was one of the risks assumed by the plaintiff.

The trial court found that there was no evidence of negligence on the part of defendants in loading the log, or in the method used in loading; that any presumption arising by the application of the doctrine of *res ipsa loquitur* had been successfully rebutted by defendants; that if there was any negligence in the method employed in loading the log, the plaintiff assumed the risk.

The doctrine of *res ipsa loquitur* arises where the thing which caused the injury complained of is shown to be under the exclusive control and management of the defendant or his servants, and the accident is such as in the ordinary course of events does not happen if those who have the management or control of the agency use proper care. The injurious occurrence of itself, in the absence of explanation by the defendant, affords reasonable evidence, or a permissible inference, that such occurrence arose from want of care. *Morner v. Union Pac. R. Co.*, 31 Wn. (2d) 282, 196 P. (2d) 744; *Shay v. Parkhurst*, 38 Wn. (2d) 341, 229 P. (2d) 510. However, the doctrine is a rule of necessity to be invoked only where direct evidence of negligence is absent and unavailable.

Here the appellant alleged certain specific acts of negligence on the part of respondents and introduced evidence in support thereof. The question of respondents' negligence and the direct cause of the accident were squarely presented to the trier of fact, and there was no occasion to resort to the doctrine of *res ipsa loquitur*.

Under the doctrine of assumed or incurred risk, it is the rule that one who voluntarily exposes himself or his property to a known and appreciated danger due to the negligence of another may not recover for injuries sustained thereby. 65 C. J. S. 848, Negligence, § 174. *Walsh v. West Coast Coal Mines*, 31 Wn. (2d) 396, 197 P. (2d) 233. In order to invoke the doctrine, it is essential that the plain-

tiff shall have exposed himself or his property voluntarily. The doctrine can apply only where a person may reasonably elect whether or not he shall expose himself to a particular danger. Also, it is essential that the risk of danger shall have been known to, and appreciated by, the plaintiff, or that it shall have been so obvious that he must be presumed to have comprehended it. 65 C. J. S. 853, Negligence, § 174; *Gila Valley G. & N. R. Co. v. Hall*, 232 U. S. 94, 58 L. Ed. 521, 34 S. Ct. 229; *Blanco v. Sun Ranches, Inc.*, 38 Wn. (2d) 894, 234 P. (2d) 499.

■ Appellant testified: "I saw them picking out this log and wrapping it before I backed the truck up. I didn't object to the method. I only operate the truck. I don't know anything about logging." Here was a truck driver who was ordered by the loading boss to "spot" his truck. He did what he was told to do. From the meager experience which he had as a trucker, it cannot be said that he knew or should have known of the danger. Certainly the danger was not so obvious that an ordinarily prudent person under the circumstances would have appreciated it. Appellant did not assume the risk incidental to the loading of the log by the method used.

The problem therefore resolves itself down to the question of whether or not respondents were negligent. In loading the log in question, respondents took the tong off of the loading line, wrapped it around the log twice, and shackled it. The eye of the loading line was inserted in the shackle or clevis, and the log in the double bight of the line.

Robert L. Stevenson, an inspector in the safety division of the department of labor and industries, testified that the method used was unsafe:

"Well, as I see it, in the points of safety, that whenever you wrap a loading line around a log you—well, let me put it this way: When you wrap this line around this log you disregard safety, for the reason that this line can rend and *brake* through the bark, where it would cut the line where the shackle is against the line. In other words, steel against steel would cause the breakage. The safe way to load that log, and I believe all truckers will realize it, was to have made a strap of cable with strength enough to lift this log

and place it on that way. There would be no cutting of the line, because the two eyes would be lifted up, and the strap would have been even. . . . Any time you got such a big log, and you shackle the eye to the bight of the line, and such a small bight in such a small shackle, you are bound to cut off."

He testified that straps are ordinarily used in Grays Harbor county for logs of this size, although he admitted that there are no rules in the department against wrapping.

Appellant testified that, immediately after the accident, he was assisting Marzell Mayr, one of the respondents, in rethreading the line, when a "cat skinner" came along with a large log and Mayr told him to leave the big logs in the woods until they got the right kind of equipment for picking them up. He also testified that, in a conversation immediately after the accident, he heard Mayr say that they should have used a strap in loading it. This testimony was not disputed.

Marzell Mayr testified that they had loaded logs as large or larger than the one in controversy by the method of double wrapping, and that this was the first instance where they had broken the line with the log in the air. He admitted, however, that they ordinarily used straps for the larger logs and that the only reason they did not use straps on this occasion was that they did not have any on hand that would fit; that they used straps because it was proved to be the safer method. Testimony on behalf of respondents' witnesses was to the effect that, although the method of using straps is safer, the wrapping method is also safe and has been used considerably. They admitted, however, that wrapping is not the common practice.

We hesitate to reverse a trial court on its findings of fact. However, in this instance we feel that the trial judge was influenced in his finding as to lack of negligence by his attitude toward the assumption of risk doctrine. In his memorandum opinion he stated:

"And even if negligence occurred, under the circumstances plaintiff must be held to have assumed the risk. He observed the method employed without protest. His busi-

ness of trucking logs involves many hazards, including that of loading. His equipment is subjected to such hazards, and he is precluded from recovery of the resulting damage."

■ We are of the opinion that it was established by a clear preponderance of the evidence that respondents were negligent in that they failed to use proper care and methods in loading the log in question.

The judgment is reversed and remanded, with directions to grant judgment to appellant in the amount of $2,049.42.

BEALS, HILL, DONWORTH, and FINLEY, JJ., concur.

