[No. 31540.   Department One.   December 13, 1951.]

MARTIN WYDENES, *Appellant,* v. HENRY DYKSTRA *et al.,* *Respondents.*[1]

[1]Reported in 238 P. (2d) 1198.

*Lloyd Holtz* and *Max R. Nicolai*, for appellant.

*Skeel, McKelvey, Henke, Evenson & Uhlmann* and *Altha P. Curry*, for respondents.

DONWORTH, J.—Plaintiff brought this action to recover damages for personal injuries sustained while working on defendants' farm. The action was tried to the court sitting with a jury. At the close of plaintiff's evidence defendants challenged the sufficiency of the evidence and moved to dismiss the action. In an oral decision, the trial court sustained the challenge and granted the motion to dismiss. Plaintiff moved to reopen the case for the introduction of further testimony. The court granted the motion and plaintiff called defendant Henry Dykstra as an adverse witness. At the conclusion of that testimony plaintiff again rested and defendants renewed their challenge to the sufficiency of the evidence and motion to dismiss. The trial court again sustained the challenge and granted the motion on the grounds that there was no evidence, or reasonable inference therefrom, of negligence on the part of defendant Henry Dykstra and that, if there were, plaintiff's assumption of the risk and contributory negligence were established as a matter of law. Plaintiff moved for a new trial. The court denied the motion and entered judgment dismissing the action. From that judgment plaintiff appeals.

Plaintiff assigns as error the trial court's sustaining of defendant's challenge to the sufficiency of the evidence, denial of plaintiff's motion for a new trial and entry of judgment dismissing plaintiff's action.

Viewing the evidence, as we must, in the light most favorable to appellant, the facts are as follows: Appellant, a farm laborer, was working for respondents, the owners of a farm

near Auburn. For twenty years he had worked for them, doing seasonal farm work, principally haying.

On June 28, 1947, he was engaged, with two other workmen, in loading hay into a barn on respondents' farm. It is necessary to explain the loading operation in some detail. A track or carrier runs along the inside of the barn at the top, projecting somewhat from one end of the barn. A truck loaded with four sections of hay is parked beneath the projecting end of the carrier. A rope, a little over two hundred feet long, is passed over pulleys on the carrier. One end of the rope is attached to a hay fork; the other end is hitched to a team of horses. The hay fork, a long metal spike, is plunged into a section of hay on the truck and prongs on the end of the fork are locked in such a way that they hold the hay. The horses are then driven away from the barn with the result that the load is lifted, until the hay fork engages the carrier, and the load is carried into the barn. A trip rope is attached to the fork so that the prongs on the fork can be released at the proper time allowing the hay to fall inside the barn.

Just prior to the accident, appellant was working on the truck beneath the projecting end of the carrier. Another workman was standing near the team of horses, preparatory to driving them, while a third man was stationed inside the barn for the purpose of leveling the hay after it had been dropped to the floor. Appellant plunged the fork into a section of hay and locked the prongs in place. He stepped onto the next section of hay and called to the team driver who started to drive the horses away from the barn. The load was lifted in the air and just as the fork struck the carrier the rope broke causing the hay to fall. The falling section of hay struck appellant, knocking him off the truck onto the ground where he sustained a serious leg injury.

The equipment used in loading had been selected and installed by respondent Henry Dykstra. Appellant had used the equipment in the same way as Dykstra always used it and the loading progressed in the usual way until the rope broke.

Appellant takes the position that, on the facts of this case, the doctrine of *res ipsa loquitur* applies and it was therefore error for the trial court to.dismiss the action. Respondents strenuously argue that *res ipsa loquitur* does not apply in this case. After a thorough analysis of the arguments of appellant and respondents, we conclude that our decision must rest on the specific language of our decisions regarding the applicability of this doctrine in master and servant cases.

The case upon which appellant places primary reliance is *LaBee v. Sultan Logging Co.*, 47 Wash. 57, 91 Pac. 560. In that case, an employee was engaged in loading logs, using a "gin pole" fastened with cables. He was injured when one of the cables broke. In holding the doctrine of *res ipsa loquitur* applicable, we stated:

"Therefore, when the servant shows that the master furnished him an instrumentality to be used for a particular purpose, that he used it for the purpose intended in the manner intended, and that it broke when being so used and injured him, he makes out a *prima facie* case of negligence against the master."

Our decision in that case was reaffirmed on rehearing in *LaBee v. Sultan Logging Co.*, 51 Wash. 81, 97 Pac. 1104, wherein we stated:

"In this case, the servant made proofs to the effect that the master furnished him with an instrument with which to do his work and directed him to do it in a particular manner; that he took the instrument and proceeded to perform the work in the manner directed, when the instrument gave way and injured him; and we think it no hardship to cast on the master the burden of showing that the instrument was suitable for the purposes for which it was intended, and that any defect therein was unknown to the master, and by reasonable diligence could not have been discovered by him."

The rule of the *LaBee* cases, *supra*, has frequently been expressly approved in our decisions. *Cleary v. General Contracting Co.*, 53 Wash. 254, 101 Pac. 888 (scaffold broke); *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016 (wheel on hand cart used for moving heavy metal broke);

*Penson v. Inland Empire Paper Co.,* 73 Wash. 338, 132 Pac. 39 (scaffold fell); *McGinn v. North Coast Stevedoring Co.,* 149 Wash. 1, 270 Pac. 113 (chain broke); *Thornton v. Van De Kamp's Holland Dutch Bakers, Inc.,* 181 Wash. 213, 42 P. (2d) 799 (awning crank slipped out of socket).

Respondents assert that our decision in *Lynch v. Ninemire Packing Co.,* 63 Wash. 423, 115 Pac. 838, is controlling. In that case, an employee was injured when a vat for rendering tallow exploded. We held the doctrine of *res ipsa loquitur* inapplicable in that case because the employee had had complete charge of the relatively complex appliance for eighteen months preceding the explosion. It further appeared that the use of the vat required a number of preparatory steps and adjustments, all of which were carried out by the employee. The opinion does include broad language to the effect that the doctrine of *res ipsa loquitur* will not apply unless the master had exclusive control of the instrumentality causing the injury.

Respondents make much of the fact that Henry Dykstra was not even present on the farm on the day that appellant was injured, asserting that, because he was not in sole and exclusive control of the hay loading mechanism, the doctrine of *res ipsa loquitur* cannot be applied in this case.

We cannot agree with this argument. The broad language in *Lynch v. Ninemire Packing Co., supra,* was unnecessary to the decision and cannot be reconciled with the rule expressed in our other cases, hereinabove discussed, several of which were decided subsequent to the *Lynch* case, *supra.* The distinction, in so far as the strength of the inference of negligence is concerned, between the explosion of a complex piece of machinery and the breaking of a rope is plain. In the former instance, any number of explanations other than the negligence of the employer immediately suggest themselves. In the latter instance, the inference of negligence on the part of the employer is comparatively strong.

We have often stated that *res ipsa loquitur* will not apply unless the agency causing the injury was in the sole and exclusive control of the defendant. See *Morner v. Union*

*Pac. R. Co.*, 31 Wn. (2d) 282, 196 P. (2d) 744. This rule, which may be termed the general rule, has no application in so far as control is in the plaintiff rather than the defendant in cases where the appliance causing the injury was provided for a particular use and was used in the manner and for the purpose intended. *LaBee v. Sultan Logging Co., supra; Graaf v. Vulcan Iron Works, supra; Penson v. Inland Empire Paper Co., supra; Thornton v. Van De Kamp's Holland Dutch Bakers, Inc., supra.* This rationale is not limited to cases involving the relationship of master and servant. *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941.

In further support of their contentions, respondents direct our attention to the following statement in *Lynch v. Ninemire Packing Co., supra*:

"If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."

However, in *Penson v. Inland Empire Paper Co., supra*, we approved our decision in the *LaBee* case, *supra*, and distinguished the *Lynch* case, saying:

"From the nature of his [the employee's] work he was in better position to explain the cause of the accident than the master was."

In the instant case, appellant's evidence showed that the injury occurred because the rope broke. From the evidence presented by appellant, viewed in the light most favorable to him, it is apparent that respondent Henry Dykstra, who installed the rope and maintained it, was in a better position than appellant to explain the cause of its breaking. Therefore, the condition, asserted by respondents to be necessary to the application of the doctrine, is present in this case.

There still remains the question whether appellant's evidence establishes his contributory negligence as a matter of law. The trial court was of the opinion that appellant

was contributorily negligent as a matter of law in not looking up as the load was lifted.

Appellant testified that he could not look up because of the seeds and dust that fell from the hay. It is readily inferable from the evidence that he was not standing directly beneath the projecting end of the carrier, since he had stepped back onto another section of hay before the load was lifted. The loads sometimes swayed as they were lifted, however; so that he was still under the area of the sway.

■ Appellant also testified that he had never had a load fall before. Whether appellant could have avoided being struck by the hay if he had kept his eyes on it as it was being lifted, seems to us to be a question upon which reasonable minds could differ. Therefore, whether his actions immediately prior to the injury, under all of the circumstances, constituted contributory negligence which was a proximate cause of his injury was a question which should have been submitted to the jury.

Respondents also argue, on the principle that an employee assumes the risk of injury from defects that are open and apparent, that appellant assumed the risk of the rope's breaking.

■ No purpose can be served by a detailed discussion of the evidence on this point. It is sufficient to say that, viewing the evidence in the light most favorable to appellant, it was for the jury to determine whether the rope was defective in any respect which was open and apparent to appellant.

For the foregoing reasons, the judgment of the trial court is hereby reversed and the cause remanded for a new trial.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.