[No. 417-40819-1.  Division One—Panel 1.  August 17, 1970.]

MRS. JACOB SIEGLER, *Individually and as Administratrix, Appellant,* v. AARON L. KUHLMAN *et al., Respondents.*

*Brodie, Fristoe & Taylor* and *Don W. Taylor,* for appellant.

*Davies, Pearson, Anderson & Gadbow* and *Alvin A. Anderson,* for respondents.

SWANSON, J.—Mrs. Jacob Siegler sued Pacific Intermountain Express Co. (P.I.E.) and its driver Aaron L. Kuhlman[1] for the wrongful death of her daughter Carol J. House. She claimed her daughter's death was caused by their negligence. The jury returned a verdict for the defendants. Plaintiff moved for a judgment n.o.v. or, in the alternative,

---

[1]Although Truck Insurance Exchange filed an answer, the record is silent as to further participation or the present status of this defendant.

for a new trial. Both motions were denied, and this appeal follows.

At about 6 p.m. on the evening of November 22, 1967, Aaron Kuhlman checked the tires, hitch assembly, brakes, and lights of a P.I.E. truck-trailer tanker rig whose tanks had just received a capacity load of gasoline.[2] He stopped 5 minutes for a cup of coffee at the Trail's End Cafe in Tumwater, Washington, and then drove into the north-bound lane of Interstate 5 toward Olympia, his destination being Port Angeles. It was dark when Kuhlman made a right turn from the freeway onto the ramp which connects Interstate Highway 5 to U. S. Highway 101 at the Capitol Lake Interchange, as he had done countless times before in making the trip to Port Angeles. He drove down the ramp at about 33 to 34 miles per hour,[3] felt a jerk and looked into his left mirror. He saw the trailer leaning to the right and applied the brakes. As he turned to the left in following the circular offramp of the interchange,[4] the trailer separated from its front wheel assembly, veered to the right, plunged through a Cyclone fence, overturned, and came to rest upside down on Capitol Lake Drive.[5] The trailer tanker was now without lights, lying in the roadway concealed by the darkness.

Meanwhile, plaintiff's 17-year-old daughter Carol House, a Tumwater High School senior, had finished her after-

---

[2] The truck's tank was loaded with 3,800 gallons of gasoline, and the trailer's tank with 4,800 gallons of gasoline.

[3] Instruction 10 stated: "You are instructed that there is, as such, no speed limit on the offramp here in question. The 30 m.p.h. sign is an advisory sign, showing a reasonable speed for normal conditions of weather and lighting and it is not intended as an enforceable limit." No error was assigned to this instruction, and it became the law of the case.

[4] The offramp proceeds in a circular direction, turns first to the right, goes under Interstate 5, and then curves to the left with the roadway slightly banked.

[5] Capitol Lake Drive is adjacent to but several feet lower than the interchange offramp. The two roadways are separated by a heavy wire mesh fence described as a "Cyclone" fence.

school job and started on the ill-fated drive toward her home. She turned onto Capitol Lake Drive, as was her custom, oblivious to the peril ahead. Miss House passed a slower vehicle as she approached the site of the overturned trailer and was traveling at approximately 45 miles per hour when she rounded the last curve.[6] Kuhlman and other witnesses saw the headlights of her approaching car and tried in vain to call her attention to the danger. She attempted to stop, but her vehicle struck the wire mesh fencing in the roadway,[7] breaking the left front headlight of her car. Almost instantaneously the gasoline exploded, and Carol House was killed.

The trial court outlined for the jury plaintiff's claim that defendants' negligence caused the death of Carol House. Defendants denied this and claimed the death was caused by her own contributory negligence. The court gave instructions defining negligence and contributory negligence.

Plaintiff requested two instructions explaining the doctrine of res ipsa loquitur. Both were refused. Plaintiff claims the failure to give either instruction constitutes reversible error.

Plaintiff contended below, and the trial court agreed, that this is a "res ipsa loquitur case." The trial judge then explained why he refused to instruct the jury on the doctrine by saying:

> I would say the Court in not giving that [the requested res ipsa loquitur instructions] was relying entirely upon the statement in the Washington Pattern Instructions, . . .[8]

---

[6]The court's instruction 9 stated: "You are instructed that the speed limit on Capitol Lake Drive was 35 m.p.h."

[7]The impact of the trailer broke the fence, and a portion of it was dragged into the roadway.

[8]The Washington Supreme Court Committee on Jury Instructions has recommended that no instruction be given on res ipsa loquitur.
Ball v. Mudge, 64 Wn.2d 247, 391 P.2d 201 (1964); Crippen v. Pulliam, 61 Wn.2d 725, 380 P.2d 475 (1963); Chase v. Beard, 55 Wn.2d 58, 346 P.2d 315 (1959). Those cases support the view that the function of the res ipsa loquitur doctrine is merely to permit the

Plaintiff argues that, given a res ipsa loquitur case, the present rule in Washington requires that the jury be instructed on the doctrine in the absence of a complete and undisputed explanation of the event. Defendants contend to the contrary.

Assuming arguendo the prerequisites[9] for the application of res ipsa loquitur are present here, two principal issues remain: (1) whether it was error *in this case* to refuse to instruct the jury on res ipsa, and (2) whether plaintiff's requested instructions were correct statements of the doctrine. As stated in W. Prosser, Torts § 40 at 232 (3d ed. 1964):

There is more agreement as to the type of case to which res ipsa loquitur is applicable than as to its procedural effect when it is applied.

Each party cites a line of cases supporting their respective arguments. This apparent inconsistency was recognized in *Douglas v. Bassabarger,* 73 Wn.2d 476, 487, 438 P.2d 829 (1968), where the court said:

We have in this jurisdiction two lines of cases concerning the res ipsa loquitur doctrine, one of which is represented by *Ball v. Mudge,* 64 Wn.2d 247, 391 P.2d 201 (1964), which states that res ipsa loquitur is not a rule of law but a rule of evidence and that it never requires a

party to get by a non-suit and that once the doctrine has been so employed to get the case to the jury, there is no special reason why the jury should be told what inferences it may draw any more than in any other case. See Wiehl, Instructing a Jury in Washington, 36 Wash. L. Rev. 378 (1961).
WPI 22.01.

[9]The criteria governing application of the doctrine of res ipsa loquitur were most recently defined in *Miles v. St. Regis Paper Co.,* 77 Wn.2d 828, 832, 467 P.2d 307 (1970):
The three prerequisites to application of the doctrine are: (1) an event which ordinarily does not occur unless someone is negligent; (2) the agency or instrumentality causing the event must be within the exclusive control of the defendant; and (3) there must be no voluntary action or contribution to the event on the part of the plaintiff. *Douglas v. Bussabarger,* 73 Wn.2d 476, 438 P.2d 829 (1968); *Emerick v. Mayr,* 39 Wn.2d 23, 234 P.2d 1079 (1951); W. Prosser, Torts § 42, at 208 (2d ed. 1955).

jury instruction, but serves only to get a plaintiff past a nonsuit. . . .

The other line of cases is exemplified by *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.* [62 Wn.2d 351, 382 P.2d 518 (1963)], which approved an instruction on circumstantial evidence which, *inter alia*, advised the jury of its right to infer negligence when the plaintiff's evidence showed that the injury was one which ordinarily would not have occurred without negligence.

Plaintiff argues that our Supreme Court has abandoned the rule declared in *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959), approved and reiterated in *Ball v. Mudge*, 64 Wn.2d 247, 391 P.2d 201 (1964),[10] and accepted by the Washington Supreme Court Committee on Jury Instructions[11] that res ipsa loquitur never requires a jury instruction. The departure was begun, plaintiff says, in *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963), when the doctrine was held applicable to take the case to the jury under the evidence and support a verdict, and made complete in *Pederson v. Dumouchel*, 72 Wn.2d 73, 431 P.2d 973 (1967), and *Douglas v. Bussabarger, supra*, by the approval in those cases of an instruction to the jury on the doctrine.

Even though an instruction defining res ipsa loquitur was approved in *Douglas*, the procedural effect and primary purpose of the doctrine as defined in *Chase* and *Ball* was recognized when the court said in *Douglas*, 73 Wn.2d at 487:

---

[10]*But see, Douglas v. Bussabarger, supra* at 497 (Rosellini, J. dissenting): "I will assume the latter case [*Ball v. Mudge, supra*] has been overruled, albeit *sub silentio*."

[11]The Supreme Court, in a letter of explanation to the members of the Washington Bench and Bar, dated October 3, 1966, stated in part as follows:

The pattern jury instructions, on their own merits, will have great persuasive force, and we recommend their use. However, it should be remembered that the Supreme Court cannot and does not approve in advance jury instructions which may be given in any particular lawsuit. Trial lawyers should keep this in mind in evaluating these pattern instructions.

WPI IX.

It is important to emphasize that the effect of our decision is not to make doctors "insurers," nor to make it impossible for them to defend themselves in malpractice cases. On the contrary; the function of the doctrine of res ipsa loquitur is only to prevent a nonsuit, not to decide the case. Doctors still have an opportunity if they so choose to come forward with evidence as to exactly what did take place in the operating room and thereby seek to avoid liability.

The court, in *Horner*, 62 Wn.2d at 359, cited with approval a rule familiar to many prior cases:

We have declared the rule in near original form, supported by a plethora of authority, in the following language:

"This doctrine constitutes a rule of evidence peculiar to the law of negligence and is an exception to, or perhaps more accurately a qualification of, the general rule that negligence is not to be presumed, but must be affirmatively proved. By virtue of the doctrine, the law recognizes that an accident, or injurious occurrence, may be of such nature, or may happen under such circumstances, that the occurrence is of itself sufficient to establish *prima facie* the fact of negligence on the part of the defendant, without further or direct proof thereof, thus casting upon the defendant the duty to come forward with an exculpatory explanation, rebutting or otherwise overcoming the presumption or inference of negligence on his part [Citing cases.]" *Morner v. Union Pac. R. Co.*, 31 Wn. (2d) 282, 196 P. (2d) 744.

■ The doctrine of res ipsa loquitur is then a rule of evidence which, when applied in a proper case, permits an inference of negligence from the occurrence itself. The duty to come forward with an exculpatory explanation rebutting or otherwise overcoming the inference is then cast upon the defendant, but the procedural application of res ipsa loquitur does not shift the burden of proof, only the duty of going forward with the evidence shifts to the defendant. *Covey v. Western Tank Lines, Inc.*, 36 Wn.2d 381, 218 P.2d 322 (1950); *Hardman v. Younkers*, 15 Wn.2d 483, 131 P.2d 177, 151 A.L.R. 868 (1942); *Briglio v. Holt & Jeffery*, 85 Wash. 155, 147 P. 877 (1915).

If the defendant comes forth with a conclusive exculpatory statement or explanation of what happened, the doctrine does not apply, and it would be error to give an instruction. *Vogreg v. Shepard Ambulance Serv., Inc.,* 47 Wn.2d 659, 289 P.2d 350 (1955); *Morner v. Union Pac. R.R.,* 31 Wn.2d 282, 196 P.2d 744 (1948). A purpose of the doctrine is to force the defendant, who usually is in a better position to explain what happened, to come forward with an explanation. As stated in W. Prosser, Torts § 40 at 234 (3d ed. 1964):

> There is, in other words, a deliberate policy of "smoking out" evidence which the defendant has or can get.

See Carpenter, *The Doctrine of Res Ipsa Loquitur in California,* 10 So. Cal. L. Rev. 166 (1937). If he does, and it is complete, the reason supporting the rule is eliminated. This analysis is well expressed in *Covey v. Western Tank Lines, Inc.,* 36 Wn.2d at 391:

> However, if the evidence submitted by either or both parties is so completely explanatory of how the accident occurred that no inference is left that the accident may have happened in any other way, there is nothing left upon which the doctrine need or can operate. [Citations omitted.]

The plaintiff's evidence tended to show that the defendants' driver Kuhlman drove faster around the curve than the posted advisory speed limit. From this evidence, the trier of the fact could infer that the speed was excessive under the circumstances which caused the trailer to lean heavily to one side and place undue pressure upon the springs. Because of this stress, the springs broke resulting in the trailer overturning. From this evidence and the inferences deducible from it, the plaintiff claims the defendants were guilty of negligence proximately creating the condition of hazard which caused the fatal injuries to Miss House. Does this proof fully explain how the accident happened? If it does, plaintiff loses the right to rely on res ipsa loquitur.

This rule was stated in *Kemalyan v. Henderson*, 45 Wn.2d 693, 704, 277 P.2d 372 (1954):

The correct rule is that a plaintiff will be bound by the testimony of his own witnesses as to how an accident causing injury occurred and can no longer rely on *res ipsa loquitur* when his evidence, if believed by the jury, will fully explain how the injury was inflicted.

Plaintiff offered no direct evidence as to why the truck "jerked," as Kuhlman testified it did just before the accident, nor why the springs broke, nor why broken springs should cause the trailer to separate from its front wheels and from the truck towing it. The plaintiff's expert witness, Dr. Morgan, a metallurgist, said that he could not tell by his examination whether there was a prior break in the springs, and said:

No, I could see no evidence of a fatigue failure or prior damage to the spring before the ultimate failure.

He also said:

Well, I have not seen anything which would indicate a mechanical failure.

And concluded by admitting:

it would . . . be a driving failure . . . going too fast or jerked it or did something that shouldn't have been done that made the trailer tip.

Plaintiff's evidence does not purport to furnish a complete explanation of the occurrence, so that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendants does not destroy the inferences which are consistent with the evidence to deprive the plaintiff of the benefit of the doctrine. See W. Prosser, Torts at 236; *Clark v. Icicle Irr. Dist.*, 72 Wn.2d 201, 432 P.2d 541 (1967); *Vogreg v. Shepard Ambulance Serv., Inc., supra.*

Defendants offered their explanation by presenting evidence that Kuhlman operated his truck around the curved offramp of the interchange in a careful manner, as he had done hundreds of times previously. He testified:

[I saw] the trailer laying over hard on its righthand—or to the right.

Evidence was presented that it would be impossible to lean the tanker over far enough to touch the wheels of the trailer without the springs breaking.

The state patrol officer, Trooper Wiles, testified he examined the two broken mainsprings and observed that the breaks in them were fresh. He said he did not think the accident was caused by driver error. He blamed it on spring breakage. Defendants' chief maintenance man, Dave Palumbo, testified that a fatigue fracture in a spring could not be seen, and admitted,

> the springs broke . . . because they were exerted . . . beyond their capacity.[12]

Uncontroverted evidence was then presented which indicated that a failure of both mainsprings is virtually unheard of. The defendants' maintenance experts claimed that they followed the procedure and practice of regular inspection and maintenance.

Defendants' explanation of the accident was that the failure of the springs caused the trailer to overturn. The springs broke, defendants claim, because undue stress was placed upon them which was unpredictable, or because of a defect which was both undiscoverable and impossible to prevent by either reasonable inspection or regular maintenance. Defendants' evidence rebutted the inferences permitted by the doctrine and, if believed, is enough to overcome the prima facie case established by plaintiff's evidence and the use of the doctrine. *Nopson v. Wockner,* 40 Wn.2d 645, 245 P.2d 1022 (1952). But does it completely explain the cause of the occurrence? If it does, the doctrine should not be submitted to the jury. *Engen v. Arnold,* 61 Wn.2d 641, 379 P.2d 990 (1963); *Emerick v. Mayr,* 39 Wn.2d 23, 234 P.2d 1079 (1951).

---

[12]See *Kemalyan v. Henderson,* 45 Wn.2d 693, 704, 277 P.2d 372 (1954), for a discussion of the problem presented when the defendant, in his effort to explain the cause, introduced evidence of some specific act of negligence. See also, 33 A.L.R.2d 799 (1954).

It is not disputed that the springs broke, but the evidence was in conflict and left an uncertainty as to why this happened. Doubts remain as to whether the springs broke because of metal fatigue, excessive stress placed upon them, or a latent defect in the springs, and as to whether or not such defect would be discoverable by reasonable inspection. This being so, it cannot be said that the evidence so completely explained how the accident occurred that there is nothing left upon which the doctrine can operate. *Covey v. Western Tank Lines, Inc., supra.*

Defendants argue that an instruction is nevertheless not necessary because they presented evidence sufficient to rebut plaintiff's proof and the prima facie case established against them with the aid of the doctrine.

It must be remembered that whether or not the doctrine is to be applied in a particular case depends upon its peculiar facts and circumstances. *McClellan v. Schwartz,* 97 Wash. 417, 166 P. 783 (1917). Its scope is limited and should be applied only where the facts and the demands of justice make its use essential. *Morner v. Union Pac. R.R., supra.* Our court, in *Emerick v. Mayr,* 39 Wn.2d at 25, stated:

> However, the doctrine is a rule of necessity to be invoked only where direct evidence of negligence is absent and unavailable.

With this admonition in mind, we review plaintiff's cases and the factors bearing upon the necessity of an instruction on the doctrine in this case.

In *Horner,* the plaintiff underwent a hysterectomy and awakened thereafter with a paralyzed arm. The defendant doctor gave no explanation to show what happened, nor evidence of causation, but limited his explanation to the many ways in which the paralysis could occur. The court said this did not amount to an explanation of the accident and held that the res ipsa rule applied so that there was evidence from which the jury could infer negligence to support the verdict.

In *Pederson,* the plaintiff had fractured his jaw in an

automobile accident and in order to reduce the fracture was administered an anesthetic from which he did not awaken for almost a month, and then with apparent brain damage. As in *Horner*, the court determined. that the result was such an extraordinary occurrence as to raise an inference of negligence and, in the absence of a satisfactory explanation, approved an instruction on res ipsa loquitur which permitted the jury to infer negligence.

In *Douglas*, the paralysis of a patient was involved following an operation to repair a stomach ulcer. The majority opinion carefully pointed out that four of five possible causes involved the negligence of the defendant doctor which supported a finding that the result was one which does not ordinarily occur in the absence of negligence. The court then said the line of cases exemplified by *Horner* applied and approved the instruction on res ipsa loquitur. In so doing, the court recognized that justice made it essential that an instruction be given in the case.[13] This factor was recognized when the court said in *Douglas*, 73 Wn.2d at 485:

> Under the circumstances, we do not believe plaintiff should have been denied the aid of the doctrine of res ipsa loquitur. Were we to hold otherwise, patients who suffer injury or disability while being operated upon will be unable to recover damages if the doctor merely alleges that a mysterious, unexpected, and unexplainable reaction by the patient to treatment took place on a single, isolated occasion, even though there is other medical testimony from which a jury could reasonably conclude that the doctor was in fact negligent.

The most recent res ipsa loquitur case decided by our

---

[13]Policy considerations may be involved in malpractice cases such as *Horner, Pederson* and *Douglas,* for, as observed in W. Prosser, Torts § 40 at 235 (3d ed. 1964):

> There may perhaps be other such relations [an action by a passenger against his carrier], such as that of physician and patient, where special conclusions are called for. Apart from such instances, however, remarkably few jurisdictions now treat res ipsa loquitur as anything more than a simple matter of circumstantial evidence.

(Footnotes omitted.)

Supreme Court is *Miles v. St. Regis Paper Co.*, 77 Wn.2d 828, 467 P.2d 307 (1970). Claude Miles was crushed to death by one of three logs which rolled from the top of a railroad flat car. The court found that the defendant railroad company had exclusive control of the instrumentality causing the injurious occurrence.[14] The court concluded that logs are ordinarily loaded and unloaded without accident, so this accident gives rise to an inference that it did not occur without negligence on defendant's part.[15] Though the doctrine was held applicable in *Miles*, and a res ipsa loquitur instruction held not to be error, it did not receive approval in affirmative language, for the court said, 77 Wn.2d at 834:

> However, on the basis of the evidence brought out at the trial, *we cannot say that the instruction on res ipsa loquitur was error.*

(Italics ours.)

In these cases, *Horner, Pederson, Douglas* and *Miles,* the doctrine was essential to plaintiff's recovery. This is consistent with the view expressed by a plethora of authorities that the doctrine ought to be used sparingly and only when justice makes its use essential. *Morner v. Union Pac. R.R.,* 31 Wn.2d 282, 196 P.2d 744 (1948); *Engen v. Arnold,* 61 Wn.2d 641, 379 P.2d 990 (1963). In the instant case, plaintiff presented evidence of defendants' negligence which supported instructions on negligence and entitled plaintiff's case to go to the jury without the aid of the doctrine. Therefore, the inferences permissible from the happening itself were not essential to overcome a nonsuit (the primary function of the doctrine), *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959); *Douglas v. Bussabarger,* 73 Wn.2d

---

[14]See the dissent joined in by three justices concerning the issue of whether defendant railroad company had exclusive control of the instrumentality causing the injurious event so that the doctrine applied.

[15]Reliance on common knowledge in finding certain conduct negligent is sharply questioned by some authorities. See 2 Harper & James, Law of Torts, 1079 (1956), and Morris, *Res Ipsa Loquitur in Texas,* 26 Texas L. Rev. 227 (1948).

476, 438 P.2d 829 (1968), to support the verdict as in *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963), nor for plaintiff's claim of negligence to be fully considered by the jury as in *Pederson v. Dumouchel*, 72 Wn.2d 73, 431 P.2d 973 (1967); *Douglas v. Bussabarger, supra,* and *Miles v. St. Regis Paper Co., supra.*

The doctrine is in part premised on the proposition that the defendant has superior knowledge of the happening or that the evidence as to the explanation of the accident is more accessible to the defendant than to the plaintiff. *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 P. 838 (1911); *Morner v. Union Pac. R.R., supra.*[16] This was the situation in plaintiff's cases, for the injuries occurred while the plaintiffs were unconscious so that the defendant was in possession of most, if not all, of the facts and had superior knowledge regarding them. See *Douglas v. Bussabarger, supra.* Here, substantially the same evidence was available to both parties for inspection and analysis.[17]

In those cases approving an instruction on the doctrine, the defendant failed to come forward with any satisfactory explanation of what happened to cause the injury. The defendant doctors were alone possessed of knowledge as to what occurred in the operating rooms but refused to accept the burden of explanation. Such is not the case here, for the defendants did come forward with an explanation of what happened, even though contradicted. The defense not only relied on a denial of plaintiff's claim of negligence and presented evidence of due care, but also affirmatively presented evidence to show the accident was caused by a mechanical failure which they could not have guarded against by the exercise of reasonable care. In addition, plaintiff's

---

[16]*See Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944), wherein the greater accessibility of the evidence to the defendant was an important factor in the decision. *But see,* 2 Harper & James, Law of Torts § 19.9 at 1094 (1956), and cases collected therein, for criticism of this requirement.

[17]The only items not available for inspection by both parties were two pieces of broken spring lost by defendants' expert witness. No fault or blame was asserted against defendants for the loss of these items.

evidence supported an instruction on decedent's contributory negligence.[18] In such circumstances it would seem unfair to place special emphasis on the inferences of negligence permissible by application of res ipsa loquitur. Plaintiff's evidence should not be entitled a special treatment as a matter of law. To elevate the importance of plaintiff's evidence to the jury by the use of the requested instruction would necessarily result in a proportionate decline in the importance of defendants' evidence.[19] Here, the court gave a comprehensive instruction on circumstantial evidence[20] which, by its language, permits inferences of other and connected facts from certain proven facts and circumstances. An instruction on res ipsa loquitur as requested, we fear, would add more confusion than clarity to the jury's understanding of the law applicable to the case. Under the circumstances of the case the trial court correctly refused to give plaintiff's requested instructions on the doctrine.

■ But, even assuming an instruction on the doctrine

---

[18]Error was not assigned to this instruction, but it should be noted that contributory negligence should not be confused with the third prerequisite for application of the doctrine—no voluntary action or contribution to the event on the part of the plaintiff. This prerequisite is allied to the requirement of control by the defendants. It does not involve contributory negligence to which defendants have the burden of proof. *Wydenes v. Dykstra*, 39 Wn.2d 756, 238 P.2d 1198 (1951). The deceased's actions after the event may have exposed her unnecessarily to the hazard, but they did not contribute to its occurrence. Such facts only go to support the contributory negligence instruction. See W. Prosser, Torts at 229; Harper & James, Law of Torts at 1094 n.3; and Morris, *Res Ipsa Loquitur in Texas*, 26 Texas L. Rev. 257, 270 (1948).

[19]See Justice Neill's dissent in *Miles*, 77 Wn.2d 837 n.1: "To add a special instruction on the res ipsa inference is to give that possible inference an unfair advantage over other possible inferences in the case."

[20]The instruction on circumstantial evidence stated:

"Evidence is of two kinds—direct and circumstantial. In giving direct evidence, a witness testified directly of his own knowledge concerning facts to be proved. Circumstantial evidence is proof of certain facts and circumstances from which may be inferred other and connected facts which usually and reasonably follow according to the common experience of mankind.

was necessary, the instructions requested by plaintiff[21] are incorrect. It is not error for the trial court to refuse an instruction that is incorrect in any particular. *Adams v. State,* 71 Wn.2d 414, 429 P.2d 109 (1967); *Robillard v. Selah-Moxee Irr. Dist.,* 54 Wn.2d 582, 343 P.2d 565 (1959). Plaintiff's requested instructions are taken from those found in *Clark v. Icicle Irr. Dist.,* 72 Wn.2d 201, 432 P.2d 541 (1967). The appellant in *Icicle* did not question either the form or the content of such instruction, but the court saw fit to state at page 203 n.2:

> We desire to make it indubitably clear that, by quoting it, we are not approving the form of this instruction. We particularly disagree with the statement that "the happening of the accident alone affords reasonable evidence . . . that the accident arose from the want of reasonable care." We have been at some pains to make it clear that the happening does not afford "reasonable evidence"; that it does no more than permit the jury to

---

"The value and weight of circumstantial evidence are to be determined from its character and nature and from its relation to all of the other facts otherwise established by the other evidence in the case. Nothing in the nature of circumstantial evidence renders it less valuable than other evidence." Instruction 15.

[21]Proposed instruction ............: "You are instructed that when a thing which causes an injury to another is shown to be under the management and control of the person charged with negligence in operation or maintenance of such thing, or in the failure to keep it in a reasonably safe condition, and if it is shown that an accident happened which, in the ordinary course of things, does not happen if those in charge of the management and maintenance of the thing exercise reasonable care, then the happening of the accident alone affords reasonable evidence in the absence of explanation by the person charged with negligence that the accident arose from the want of reasonable care on the part of such person."

Proposed instruction ........: "You are instructed that when an object which causes an injury to another is shown to be under the management and control of a person charged with negligence in the operation of such thing or the failure to keep it in a reasonably safe condition, and if it is shown that the incident happened which in the ordinary course of things does not happen, if those in charge of this management and control exercise reasonable care, then the happening of said occurrence affords reasonable evidence, in the absence of an explanation by the person charged with negligence, that the occurrence arose from the want of reasonable care on the part of such person."

246

infer, though it is not required to so infer, that the defendant or its agents were at some point negligent.

Judgment affirmed.

JAMES, C. J., and FARRIS, J., concur.

Petition for rehearing denied September 14, 1970.

Review granted by Supreme Court October 1, 1970.